# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAGISTRATE MAHDI SUFI EL : | |
|            **Plaintiff,** : | |
| : | |
| v. : | CIVIL ACTION NO. 17-4915 |
| : | |
| PEOPLE'S EMERGENCY CENTER, *et al.* : | |
|            **Defendants.** : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                        **June 12, 2018**

Plaintiff, proceeding *pro se*, has filed suit against his former landlord, property manager, and neighbor alleging housing discrimination in violation of the Fair Housing Act ("FHA"),[1] the use of the threat of violence to interfere with housing rights,[2] interference or retaliation in violation of the FHA,[3] failure to protect internationally protected persons,[4] and disability discrimination under the Americans with Disabilities Act ("ADA").[5] Defendants People's Emergency Center ("PEC"), 4050 Apartments, LP, and Dawn Burrous have moved to dismiss Plaintiff's Second Amended Complaint.[6] For the following reasons, the motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff alleges the following facts, which must be accepted as true for purposes of the motion to dismiss. Plaintiff applied for housing with PEC at a newly-opened apartment building at 4050 Haverford Avenue in Philadelphia, which required prospective tenants to be working

---

[1] 42 U.S.C. § 3604, *et seq.*

[2] 42 U.S.C. § 3631.

[3] 42 U.S.C. § 3617.

[4] 18 U.S.C. § 112.

[5] 42 U.S.C. § 12101, *et seq.*

[6] The Court treats the Second Amended Complaint as the operative complaint. The remaining Defendant, Quincy Logan, has not appeared in the litigation, and it is not clear whether service has been effected.

artists or gave preference to working artists.[7] Plaintiff and his wife both qualified, and he was notified in December 2016 that the move-in date was imminent.[8] However, although other tenants signed their leases and received the keys at the ribbon-cutting ceremony on January 25, 2017, Plaintiff did not, and when he asked why was told by a PEC employee that PEC "is really a Christian-based non-profit organization and so does not care to have folks of Islamic religion inside of their programs nor the recipients of any of the Artists Lofts."[9] PEC refused to accept Plaintiff's payment from the Philadelphia Office of Supportive Housing as a security deposit and he was told by a PEC employee that the organization was not sure if Plaintiff and his spouse were actually married, and would not allow them to cohabitate if unmarried.[10] Plaintiff also alleges that offensive comments were made to Plaintiff, who identifies as a "native born Moor; considered an 'Urban Indian,'" because he and his family do not identify as "Black or African-American."[11] Plaintiff and his spouse were locked out of the awarded unit until March 21, 2017, leaving them to live in a cargo van until then.[12] It was not until a local reporter made inquiries that Plaintiff and his wife were able to sign the lease and move into the promised loft.[13]

Once Plaintiff moved into the loft, Defendant Burrous mocked Plaintiff's spouse's face-veil, burqa and crutches, and issued a lease infraction for disturbance of the peace within seven days of Plaintiff's arrival.[14] The next-door neighbor made "open, violent, and sustained threats of sexual violence" upon Plaintiff's daughter and other children, but the neighbor was not

---

[7] Second Amended Complaint ("SAC") at ¶¶ 17-18.
[8] *Id.* at ¶ 19.
[9] *Id.* at ¶ 27.
[10] *Id.* at ¶ 30.
[11] *Id.* at ¶¶ 32-33.
[12] *Id.* at ¶ 36.
[13] *Id.* at ¶¶ 39-43.
[14] *Id.* at ¶¶ 47-48.

charged with a lease infraction and no action was taken in response to the reported threats.[15] Another tenant was responsible for a brawl that resulted in a police response and multiple arrests; that tenant also was not cited.[16] Plaintiff was cited over the next several months for issues such as the "unnecessary usage of [P]laintiff's wheelchair in hallway" and for operating a feeding program that many tenants with children participated in during the summer.[17] Defendants sued Plaintiff in landlord/tenant court, which ruled in Defendants' favor.[18] Plaintiff alleges he was treated differently from other tenants, denied benefits of the building, such as the community room, and otherwise harmed.[19]

## II. LEGAL STANDARD

Dismissal of a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[20] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[21] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[22] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[23] The

---

[15] *Id.* at ¶¶ 49-52.

[16] *Id.* at ¶¶ 53-55.

[17] *Id.* at ¶ 58.

[18] *Id.* at ¶¶ 59-62.

[19] *Id.* at ¶¶ 65-85.

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[21] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[22] *Twombly*, 550 U.S. at 555, 564.

[23] *Id.* at 570.

complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[24] In deciding "a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[25]

## III. DISCUSSION

### A. Dismissal for Failure to Prosecute

In their supplemental motion, Moving Defendants argue that the case should be dismissed because Plaintiff failed to file an opposition to the motion to dismiss, although the Court set an extended deadline for filing such a response. The Court of Appeals has held that "motions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions."[26] The Court concludes that at this time dismissal is not warranted based on the failure to oppose the motion, particularly given Plaintiff's *pro se* status.[27] However, Plaintiff is required to comply with the orders of the Court and to prosecute his case, and the failure to do so moving forward may result in dismissal.

### B. Standing

Moving Defendants seek dismissal of any claims brought on behalf of Plaintiff's wife or children. Plaintiff does not have standing to bring claims on his wife's behalf,[28] and because he is not an attorney, he cannot represent anyone other than himself with regard to the claims raised

---

[24] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[25] *Pension Ben. Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[26] *Gary v. Pa. Human Relations Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

[27] *See id.* (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984)).

[28] *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011).

in this case.[29] To the extent the Second Amended Complaint may be read as asserting claims on behalf of anyone other than Plaintiff, those claims will be dismissed without prejudice.

### C. FHA Claims: Counts One, Two, and Five

The FHA prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."[30] A plaintiff may allege that a defendant was either motivated by intentional discrimination or that the action resulted in a discriminatory effect.[31] A claim for intentional discrimination may be alleged through direct or indirect evidence.[32] Direct evidence "must be such that it demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision."[33] Here, Plaintiff alleges that he was not permitted to sign the lease and move into his promised apartment on the day of the ribbon cutting for the building although other tenants were, and he alleges that a PEC employee told Plaintiff that PEC "does not care of have folks of Islamic religion inside of their programs nor the recipients of any of the Artists Lofts."[34] Although Plaintiff eventually did move into the building, he cited a "prolonged denial" of his access to a promised unit, which he alleges was resolved only after a reporter inquired into his situation. The alleged statement by a PEC employee, which the Court must accept as true for purposes of

---

[29] *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991).

[30] 42 U.S.C. § 3604(b).

[31] *Doe v. City of Butler,* 892 F.2d 315, 323 (3d Cir. 1989).

[32] *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998).

[33] *Id.* (internal quotation marks and citations omitted).

[34] SAC ¶ 27.

the motion to dismiss, "is so revealing of discriminatory animus" as to be sufficient to state a claim.[35] The motion to dismiss Count One will be denied.[36]

Plaintiff also alleges a claim for retaliation or interference under 42 U.S.C. § 3617, which states that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title." The applicable regulations prohibit "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race [or] . . . religion . . . of such persons."[37] To state such a claim, Plaintiff must allege "that (1) [he] is a protected individual under the FHA, (2) [he] was engaged in the exercise or enjoyment of [his] fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of [his] protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate."[38] Plaintiff alleges that he was subjected to harassment in the form of continual lease infractions and denied the use of the community room. As discussed in connection with the § 3604 claim, Plaintiff has alleged an intent to discriminate. Liberally construing the *pro se* allegations and accepting them as true for purposes of the motion, Plaintiff has alleged harassment "sufficiently severe or pervasive as to create a hostile environment."[39] The interference claim in Count Five will not be dismissed.[40]

---

[35] *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994).

[36] To the extent that Plaintiff alleges that the lease infractions were part of a continuing pattern harassment based on this animus, those claims also may proceed.

[37] 24 C.F. R. § 100.400(c)(2).

[38] *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

[39] *Revock v. Cowpet Bay West Condo. Ass'n*, 853 F.3d 96, 113 (3d Cir. 2017) (internal quotation marks and citation omitted).

[40] Plaintiff has not stated a claim for retaliation. Under the applicable regulations, unlawful activity includes retaliating against someone who reported a discriminatory housing practice to a housing provider or other authority. *Lloyd v. Preby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017) (citing 24 C.F.R. § 100.400(c)(6)). To state a claim for retaliation, a plaintiff must allege that "(1) she engaged in a protected activity; (2) the defendant

However, Plaintiff cannot state a claim under 42 U.S.C. § 3631, which is a criminal statute prohibiting the use of force or the threat of force to interfere with a person because of race, color, religion, sex, handicap, familial status or national origin in the rental or occupation of a dwelling. The statute does not create a private right of action, and Count Two will be dismissed with prejudice.[41]

### D. Claims Under 18 U.S.C. § 112: Count Three

Plaintiff alleges claims pursuant to 18 U.S.C. § 112, which provides criminal penalties for someone who assaults or threatens violence to a "foreign official, official guest, or internationally protected person."[42] The statute does not provide a private right of action for damages, and Plaintiff has alleged no facts that would support a finding that he is within the class of persons protected under the statute.[43] Count Three will be dismissed with prejudice.

### E. ADA Claims: Count Four

Congress enacted the ADA in 1990 with the purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."[44]

Title II of the ADA generally makes it unlawful for public entities to discriminate against individuals with disabilities in the provision of public services.[45] To state a claim under Title II,

---

subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Id.* Plaintiff has not alleged that he engaged in a protected activity, such as filing a complaint with the Department of Housing and Urban Development.

[41] *See Lawton v. N.J. Dep't of Cmty. Affairs*, No. 15-8526, 2016 WL 5012321, at *3 (Sept. 16, 2016).

[42] 18 U.S.C. § 112(a).

[43] *See* 18 U.S.C. §§ 112(c), 1116 (definitions).

[44] 42 U.S.C. § 12101(b).

[45] *See* 42 U.S.C. §§ 12131–12134.

Plaintiff must allege: "[1] he is a qualified individual with a disability; [2] that he was excluded from a service, program, or activity of a public entity; and [3] that he was excluded because of his disability."[46] To state a claim under Title III, Plaintiff must allege that: "(1) he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; (3) by any person who owns or operates a place of public accommodation."[47] Plaintiff has not stated whether he seeks to proceed under Title II or Title III of the ADA, but has not stated a claim under either provision, because he has not alleged discrimination by a "public entity" or a "place of public accommodation."[48] Plaintiff alleges that PEC is a non-profit agency, that 4050 Apartments LP is the property management company, and that Dawn Burrous is the property manager.[49] There are no allegations that any Defendant or the apartment building is an instrumentality of a state or local government and that would qualify as a public entity for purposes of Title II.[50] For purposes of Title III, "apartments and condominiums do not constitute public accommodations,"[51] even where the property accepts tenants receiving federal housing subsidies.[52] Plaintiff has not alleged that any areas of the building, such as the community room

---

[46] *Disability Rights N.J., Inc. v. Comm'r, New Jersey Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (internal quotations and citations omitted).

[47] *Antonelli v. Gloucester Cnty. Hous. Auth.*, No. 17-5313, 2018 WL 429155 (D.N.J. Jan. 16, 2018) (citing 42 U.S.C. § 12182(a)).

[48] 42 U.S.C. §§ 12132, 12182.

[49] SAC at ¶¶ 5, 7-8. The non-moving Defendant is a tenant.

[50] 42 U.S.C. § 12131(1)(B).

[51] *Indep. Hous. Svcs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal 1993), *quoted in Mitchell v. Walters*, No. 10-1061, 2010 WL 3614210 at *4 (D.N.J. Sept. 8, 2010). *Accord Regents of Mercerburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 n.8 (3d Cir. 2006) (agreeing that apartments and condominiums are not subject to ADA compliance, although commercial entities occupying part of such a building would be).

[52] *Mitchell*, 2010 WL 3614210 at *4 (citing *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 264 n.5 (E.D.N.Y. 2009)).

or the parking lot, are open to the general public and therefore the ADA claim will be dismissed without prejudice.[53]

### F. Punitive Damages

Moving Defendants seek to dismiss the claim for punitive damages. As punitive damages are available under the FHA, this issue is better resolved on a developed record.[54]

### G. Amendment

In civil rights cases, "district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."[55] The Court will not allow amendment under the criminal statutes, as amendment would be futile. However, as it is possible that Plaintiff could state a claim under the ADA, he will be permitted to file an amended complaint as to that claim.

## IV. CONCLUSION

Plaintiff may proceed on his own behalf as to Counts One and Five. All other claims will be dismissed, and Plaintiff may amend the claim under the ADA if he can do so in conformity with this memorandum opinion. An order will be entered.

---

[53] It is also not clear for purposes of the ADA claim that Plaintiff has a disability, which is "a physical or mental impairment that substantially limits a major life activity." 42 U.S.C. § 12102(1)–(2). The condition generally must be a permanent one, and not a temporary condition such as a broken ankle, which Plaintiff alleges his wife had sustained (and, as stated earlier, Plaintiff cannot state a claim on his wife's behalf). If Plaintiff files an amended complaint as to the ADA claim, this must be clarified as well.

[54] 42 U.S.C. § 3613(c)(1).

[55] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).